IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DORIS P.[1]                                          :          CIVIL ACTION
                                                     :
                v.                                   :
                                                     :
FRANK BISIGNANO, Commissioner                        :
of Social Security[2]                                :          NO.  25-20

**MEMORANDUM AND ORDER**

CAROLINE GOLDNER CINQUANTO, U.S.M.J.                      March  5, 2026

Plaintiff filed this appeal from the Commissioner's decision denying her

application for disability insurance benefits ("DIB").[3]  Rather than challenging the

decision of the Administrative Law Judge ("ALJ"), Plaintiff presents a purely legal

question – "whether the case should be remanded to the Appeals Council for a full review

---

[1]Consistent with the practice of this court to protect the privacy interests of plaintiffs in social security cases, I will refer to Plaintiff using her first name and last initial.  See Standing Order – In re:  Party Identification in Social Security Cases (E.D. Pa. June 10, 2024).

[2]Frank Bisignano was appointed Commissioner of Social Security on May 6, 2025.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Bisignano should be substituted as the defendant in this case.  No further action need be taken to continue this suit pursuant to section 205(g) of the Social Security Act.  42 U.S.C. § 405(g).

[3]In her brief, Plaintiff claims this action involves the denial of supplemental security income ("SSI").  Doc. 12 at 1.  However, everything in the administrative record refers to her application for DIB, with no mention of an SSI application.  See, e.g., tr. at 196-99 (application for DIB), 17 (ALJ decision referring to DIB application).  In order to be eligible for DIB, Plaintiff must establish that she became disabled prior to the expiration of her insured status or date last insured ("DLI").  20 C.F.R. § 404.131(b). Here, Plaintiff's DLI is December 31, 2026.  Tr. at 19, 200.

as the Defendant failed to abide by the Hallex provision 1-2-5-77." Doc. 12 at 2.[4]  The

cited provision deals with providing the audio recording or transcript of the

administrative hearing.  See https://secure.ssa.gov/ apps10/poms.nsf/lnx/2501250077

(last visited Feb. 19, 2026).    Defendant responds that reliance on the HALLEX is

inappropriate because the manual "lacks the force of law and creates no judicially

enforceable rights."  Doc. 14 at 7 (quoting Bordes, 235 F. App'x at 859).  For the reasons

that follow, I conclude that the violation of the HALLEX is not sufficient to warrant

remand, and Plaintiff has failed to establish any prejudice resulted from Defendant's

failure to follow the HALLEX in this case.  In addition, upon independent review, I

conclude that the ALJ's decision is supported by substantial evidence and affirm the

Commissioner's decision.

---

[4]HALLEX refers to the Hearings, Appeals, and Litigation Law manual.

> Through HALLEX, the Associate Commissioner of Hearings and Appeals conveys guiding principles, procedural guidance[,] and information to the Office of Hearings and Appeals ("OHA") staff.  HALLEX includes policy statements resulting from an Appeals Council en banc meeting under the authority of the Appeals Council Chair.  It also defines procedures for carrying out policy and provides guidance for processing and adjudicating claims at the Hearing, Appeals Council, and Civil Action levels.

Bordes v. Comm'r of Soc. Sec., 235 F. App'x 853, 857 n.7 (3d Cir. 2007) (quoting HALLEX § I-1-0-1, Purpose, http://www.socialsecurity.gov/OP_Home/hallex/I01/I-1-0-1.html).  HALLEX provisions are available at http://www.ssa.gov/OP_Home/hallex/.

## I.    <u>PROCEDURAL HISTORY</u>

Plaintiff protectively filed an application for DIB on May 2, 2022.  <u>Tr.</u> at 89, 196-99.  She alleged that she became disabled on January 1, 2021, as a result of depression and anxiety.  <u>Id.</u> at 196, 223.  Her application was denied initially on November 7, 2022, <u>id.</u> at 105-06, and again on reconsideration on November 13, 2023.  <u>Id.</u> at 121-22.  On November 28, 2023, Plaintiff requested an administrative hearing.  <u>Id.</u> at 124-25.  After holding a hearing on June 13, 2024, <u>id.</u> at 35-71, an ALJ issued an unfavorable decision on July 29, 2024.  <u>Id.</u> at 17-30.

On August 19, 2024, Plaintiff's counsel filed an appeal and requested a copy of the transcript to prepare a brief in support of the appeal.  <u>Id.</u> at 191-92; Doc. 2-2 at 15.[5] On September 9, 2024, the Appeals Council granted Plaintiff's counsel an extension of time to send additional information, without responding to his request for a transcript. <u>Tr.</u> at 9-10.  On September 24, 2024, Plaintiff's counsel indicated that he did not intend to file additional evidence, but sought an extension of time to get the transcript and prepare a brief.  Doc. 2-2 at 16.[6]  On November 8, 2024, the Appeals Council denied Plaintiff's

---

[5]Although dated August 19, 2024, it appears that this letter was faxed to Defendant on August 22, 2024.  <u>See</u> <u>tr.</u> at 191; Doc. 2-2 at 15.  The letter was received by the Appeals Council and included as an exhibit in the administrative record.  <u>See</u> <u>tr.</u> at 4.

[6]Although dated September 24, 2024, it appears that this letter was faxed to Defendant on November 22, 2024.  <u>See</u> Doc. 2-2 at 16.  Therefore, it is unclear if this letter was received by Defendant prior to the Appeals Council's decision dated November 8, 2024.  <u>Tr.</u> at 1-3.  This letter is not included in the administrative record.

request for review, id. at 1-3, making the ALJ's July 29, 2024 decision the final decision of the Commissioner.  20 C.F.R. § 404.981.

Plaintiff sought review in federal court on January 3, 2025, Doc. 1, and the matter is now fully briefed.  Docs. 12, 14, 16.  The case was originally assigned to my colleague, the Honorable Carol Sandra Moore Wells, and was reassigned to me.  Doc. 11.[7]

## II.    CLAIM OF LEGAL ERROR

Plaintiff's claim focuses on the Appeals Council's failure to provide a copy of the transcript of the administrative hearing prior to rendering its decision.  Doc. 12 at 2.  She asks this court to remand the case "to the Appeals Council for a full review as the Defendant failed to abide by the Hallex provision I-1-5-77."  Id.[8]  Defendant responds that "a violation of a HALLEX provision is not cognizable unless the claimant can show she was prejudiced by the violation."  Doc. 14 at 7.

The Third Circuit has held that HALLEX provisions "lack the force of law and create no judicially-enforceable rights."  Bordes, 235 F. App'x 853, 859 (citing

---

[7]The parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  See Standing Order – In Re: Direct Assignment of Social Security Appeals to Magistrate Judges – Extension of Pilot Program (E.D. Pa. Nov. 27, 2020); Doc. 6. However, when the case was reassigned, Plaintiff did not respond to the Orders requiring her to submit the Consent/Declination Form.  See Doc. 13 ¶ 6 & Doc. 15.  Therefore, the Plaintiff was deemed to have consented to my jurisdiction.  Doc. 17.

[8]I note that Plaintiff's counsel concedes that he received a disk from Defendant on December 18, 2024, "which appeared to contain the Hearing Transcript."  Doc. 12 at 2. In addition, Defendant filed the electronic Certified Administrative Record, including the transcript of the administrative hearing, with this court on March 10, 2025.  Doc. 8. Despite having the transcript he was missing, Plaintiff's counsel did not include any substantive challenges to the ALJ's decision in his Brief and Statement of Issues.

4

Schweiker v. Hansen, 450 U.S. 785, 789 (1981) (Social Security Administration Claims Manual "has no legal force, and . . . does not bind the SSA"); Binder & Binder PC v. Barnhart, 481 F.3d 141, 151 (3d Cir. 2007) ("Even if SSA Program Circular were part of POMS, [the Program Operations Manual System], 'it still would not constitute properly enacted policy or have the force of law.'"); Lowry v. Barnhart, 329 F.3d 1019, 1023 (9th Cir. 2003) (stating that "neither [POMS nor HALLEX] imposes judicially enforceable duties")) (additional citations omitted).  The Bordes court noted that "[t]he Fifth Circuit has taken a more stringent approach," explaining "[i]f prejudice results from a violation [of HALLEX], . . . the result cannot stand."  Id. (quoting Newton v. Apfel, 209 F.3d 448, 459-60 (5th Cir. 2000)).  "While it did not adopt the Fifth Circuit's analysis, the Court of Appeals in Bordes, nonetheless held that, even under the Fifth Circuit's approach, the claimant had not shown that it was prejudiced by the Appeals Council's failure to comply with its own policies and was therefore not entitled to reversal or remand."  Muhammad v. Astrue, Civ. No. 08-278, 2009 WL 4937805, at *11 (W.D. Pa. Dec. 15, 2009).  Following Bordes, judges throughout the districts in the Third Circuit have held that "a mere violation of the HALLEX does not serve as a valid basis for remand."  Martinez v. Kijakazi, Civ. No. 21-2038, 2022 WL 118123, at *2 (E.D. Pa. Jan. 12, 2022); Ganges v. Comm'r of Soc. Sec., Civ. No. 17-1982, 2018 WL 5342717, at *8 (D.N.J. Oct. 29, 2018); Grimm v. Colvin, Civ. No. 14-1614, 2015 WL 5123700, at *5 (W.D. Pa. Sept. 1, 2015).

Plaintiff relies on Hause v. Berryhill, Civ. No. 18-941, Memorandum (M.D. Pa. Feb. 25, 2019), in arguing that the failure to supply the transcript denied Plaintiff due

process in pursuing her appeal.[9]  Doc. 12 at 3.  In Hause, after receiving the Appeals

Council's decision, the plaintiff's counsel, who did not represent the plaintiff at the

administrative level, filed a written request for an extension of time to file an action in

federal court and requested a copy of the hearing transcript to determine if there was a

basis to appeal.  Hause, Civ. No. 18-941, Memorandum, at 2-3.  Two months after the

federal appeal-period expired, the Appeals Council denied the request for an extension,

but included a copy of the requested hearing transcript.  Id. at 2.  As a result of this delay,

the plaintiff had not timely filed his complaint in federal court.  Id. at 1.  When the

plaintiff filed the appeal in federal court, the defendant filed a motion to dismiss because

the appeal was filed beyond the 60 days permitted by statute.  The District Court found

that equitable tolling of the appeal period was appropriate.  Id. at 4.

Hause is distinguishable from the case at hand.  In Hause, the Appeals Council's

failure to timely respond to the request for an extension to file the federal court appeal

would have resulted in a complete denial of federal court review of Plaintiff's claims.

Here, the lack of the administrative hearing transcript resulted in counsel's inability to

brief issues arising from the hearing for the Appeals Council.[10]  Counsel did file an

appeal with the Appeals Council and the Appeals Council considered the appeal, but

found no basis to grant the request for review.  Tr. at 1-3.

---

[9]Defendant supplied a copy of Hause attached to the response.  See Doc. 14-1.

[10]I also not that counsel participated in the telephonic hearing, but his "attendance at the [h]earing was somewhat hampered by [his] inability to hear due to [his] hearing aids not working for the last ten or fifteen minutes of the [h]earing."  Doc. 2-2 at 16.

The issue presented in this case is more similar to one that arose in Glenn C. v. Kijakazi, wherein the plaintiff's counsel, who began representing the plaintiff after the ALJ's decision, argued that the Appeals Council failed to provide him with approximately 1,000 pages of medical evidence in the administrative record. Civ. No. 19-16806, 2021 WL 4438390, at *9 (D.N.J. Sept. 28, 2021). The plaintiff argued that he "was denied any right to review or raise issues [to the Appeals Council] since the [p]laintiff's [attorney] had no knowledge of their existence," and that the denial of the complete administrative record amounted to a denial of due process, relying on the HALLEX. Id.

The District Court rejected Plaintiff's argument relying in part on the Third Circuit's decision in Bordes.

> Plaintiff's arguments are not well taken. "'[D]ue process requires that any hearing afforded [a Social Security disability] claimant be full and fair.' . . . This standard is violated where a claimant is deprived of the opportunity to present evidence to an ALJ in support of his or her claim or where the ALJ exhibits bias or animus against the claimant." Bordes, . . . 235 F. App'x [at] 857-58 . . . (quoting Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995)) (internal quotation marks omitted). However, to the extent that [the p]laintiff relies on HALLEX as a source of his due process rights, "as an internal manual, HALLEX doses not have the force of law[.]" Moraes v. Comm'r of Soc. Sec., 645 F. App'x 182, 186 (3d Cir. 2016) (citing Schwaiker v. Hansen, 450 U.S. 785, 789 (1981) (per curiam) (stating that the HALLEX "has no legal force, and it does not bind the SSA. Rather, it is a 13-volume handbook for internal use by thousands of SSA employees") . . . . "Thus, Plaintiff cannot establish that he suffered a deprivation of due process simply by pointing to alleged violations of the HALLEX." Grimm, . . . 2015 WL 5123700, at *4-5 . . . (citing Bordes, 235 F. App'x at 859).

7

Glenn C., 2021 WL 4438390, at *10 (additional citations omitted)

Guided by the Third Circuit's decision in Bordes, the district court went further

and analyzed whether prejudice resulted from the missing records.

> However, even assuming that the Appeals Council erred in
> failing to provide to [the p]laintiff's new counsel the
> approximately 1000 pages [of medical records], [the
> p]laintiff has not shown that such records require remand.
> Although [the p]laintiff complains that his new attorney was
> denied at the Appeals Council level any right to review or
> raise issues based on this evidence, [the p]laintiff has not
> explained what arguments [his new attorney] would have
> raised to the Appeals Council had these records . . .  been
> provided.  At most, [the p]laintiff simply provides a brief
> summary of these records, and characterizes them as "new
> and material evidence," but offers no explanation as to why
> this evidence would warrant remand.  The court will not
> construct [the p]laintiff's arguments for him.  See Padgett v.
> Comm'r of Soc. Sec., [Civ.] No. 16-9441, 2018 WL
> 1399307, at *2 (D.N.J. Mar. 20, 2018) ("[B]ecause Plaintiff
> has articulated no analysis of the evidence, the Court does
> not understand what argument Plaintiff has made here.
> Plaintiff has done no more than thrown down a few pieces of
> an unknown jigsaw puzzle and left it to the Court to put them
> together.  The Court does not assemble arguments for a party
> from fragments.").

Glenn C., 2021 WL 4438390, at *10 (internal quotations from the briefing omitted).

Because the plaintiff failed to enunciate any arguments he was unable to make to the

Appeals Council due to the lack of records, the district court found the Appeals Council's

failure to provide the records was, "at most, harmless error that does not require remand."

Id.

Here, the only issue that Plaintiff has presented is that the violation of the

HALLEX provision, which requires production of the transcript of the administrative

8

hearing, mandates remand.  Doc. 12 at 2.  In her reply to Defendant's response, Plaintiff argues that she "has the right to have the [d]ecision of the [ALJ] appealed to the Appeals Council."  Doc. 16 at 1.  As explained above, the violation of the HALLEX alone is not a basis for remand.  Moreover, the Appeals Council did consider Plaintiff's appeal and denied review.  See tr. at 1-3.  Finally, Plaintiff does not allege a single error with respect to the ALJ's decision.  Thus, she has failed to establish that her counsel's failure to file a brief to the Appeals Counsel based on the lack of transcript prejudiced her in any way.[11]

Although Plaintiff did not challenge the ALJ's decision, the role of the court on judicial review is to determine if the ALJ's decision is supported by substantial evidence.  42 U.S.C. § 405(g); Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).  Therefore, I will proceed to review the ALJ's decision.

## III.   SUBSTANTIAL EVIDENCE REVIEW

### A.    Legal Standard

As noted, the issue in this case is whether there is substantial evidence to support the Commissioner's conclusion that Plaintiff is not disabled.  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and must be "more than a mere scintilla."  Zirnsak v. Colvin, 777 F.3d 607, 610 (3d Cir. 2014) (quoting Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)); see also Biestek v. Berryhill, 587 U.S. 97, 103 (2019) (substantial evidence "means only

---

[11]Unlike Glenn C., Plaintiff does not allege that she was missing any of the medical records, but only sought the transcript of the administrative hearing.

– 'such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion'") (quoting <u>Consol. Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)).  The

court has plenary review of legal issues.  <u>Schaudeck</u>, 181 F.3d at 431.

To prove disability, a claimant must demonstrate an "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment . . . which has lasted or can be expected to last for . . . not less than twelve

months."  42 U.S.C. § 423(d)(1).  The Commissioner employs a five-step process,

evaluating:

> 1.      Whether the claimant is currently engaged in substantial gainful activity;

> 2.      If not, whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to perform basic work activities that has lasted or is expected to last for a continuous period of 12 months;

> 3.      If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the listing of impairments ("Listings"), 20 C.F.R. pt. 404, subpt. P, app. 1, which results in a presumption of disability;

> 4.      If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the residual functional capacity ("RFC") to perform her past work; and

> 5.      If the claimant cannot perform her past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

<u>See</u> <u>Zirnsak</u>, 777 F.3d at 610; <u>see</u> <u>also</u> 20 C.F.R. § 404.1520(a)(4).  Plaintiff bears the

burden of proof at steps one through four, while the burden shifts to the Commissioner at

the fifth step to establish that the claimant is capable of performing other jobs in the local and national economies, in light of her age, education, work experience, and RFC.  See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).

     B.     ALJ's Findings

In her July 29, 2024 decision, the ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since January 1, 2021, her alleged onset date.  Tr. at 19.  At step two, the ALJ found that Plaintiff has the following severe impairments: depression, anxiety, schizoaffective disorder, and substance abuse.  Id. at 20.  At the third step, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." Id.  The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> a full range of work at all exertional levels but with the following nonexertional limitations:  [Plaintiff] can have no more than occasional exposure to temperature extremes, wetness, humidity, and respiratory irritants and no exposure to workplace hazards.  Any work should be limited to routine tasks with detailed but uninvolved instructions, no contact with the public, incidental interactions with coworkers, occasional interactions with supervisors, [and] occasional changes in work processes or tasks.

Id. at 22.  At the fourth step, the ALJ found Plaintiff is unable to perform her past relevant work as a customer service representative.  Id. at 29.  Based on the Plaintiff's age, education, experience, and RFC, a vocational expert ("VE") testified that Plaintiff could perform the jobs of photocopy machine operator, price marker, and shelving clerk. Id. at 30.  Based on this testimony, the ALJ found that Plaintiff was not disabled.  Id.

11

C.    Plaintiff's Claimed Limitations and Testimony at the Hearing

Plaintiff was born on February 24, 1983. Tr. at 38. She completed the ninth grade. Id. at 39. Her past relevant work is as a customer service representative at a furniture store. Id. Plaintiff was 37 years old when she alleges she became disabled on January 1, 2021, and 41 years old at the time of the ALJ's July 29, 2024 decision. Id. at 38.

At the hearing, Plaintiff testified as follows. She was fired from her customer service job due to absenteeism. Tr. at 45. She was not good at customer service, which caused her stress, which resulted in her missing work. Id. at 44-45. Plaintiff finds it is difficult to talk to people, her mind wanders, and she has trust issues. Id. at 45-46. She does not deal well with children due to her depression. Id. at 46. Plaintiff is irritable around people and hesitates to go into stores without her daughter because she fears she will get into an argument. Id. at 47-48.

Plaintiff complained of seeing hallucinations, including black shadows, an alligator tail, and her deceased sister. Tr. 49. She also complained of hearing voices. Id. at 49. She also suffers from anxiety attacks, which cause knots in her stomach and to feel nauseous. Id. at 50. These anxiety attacks occur every day and can last for half an hour. Id. at 49. She also suffers from crying spells that can go for hours. Id. at 50. Plaintiff has flashbacks to 2006, the year her sister was murdered, and to physical abuse by her daughter's father. Id. at 53. Plaintiff complained of feeling "out of it" and tired "a lot." Id. at 51. She has trouble sleeping at night because she has "[s]tuff on [her] mind." Id. Plaintiff also has difficulty finishing what she starts. Id.

12

Plaintiff's mother also testified at the hearing.  Tr. at 56-62.  She testified Plaintiff tried to commit suicide when she was 16 and that she has had Plaintiff involuntarily committed three times, including in March 2023, when Plaintiff texted that she was going to kill herself.  Id. at 57-58.

A VE also testified at the administrative hearing.  Tr. at 63-70.  The ALJ asked the VE to consider someone of Plaintiff's age, education, and background, who could perform light work, with the other limitations contained in the ALJ's RFC assessment, see supra at 11.  Id. at 63-64.  The VE testified that such an individual could not perform Plaintiff' past relevant work, but could perform the jobs of photocopy machine operator, price marker, and shelving clerk.  Id. at 64.  Based on the VE's testimony, the ALJ found that Plaintiff was not disabled.  Id. at 30.

D.    Medical & Mental Health Records

1.    Treatment Providers

Plaintiff has a history of asthma, as well as childhood seizures.  Tr. at 883.  In addition, she has a history of mental health impairments prior to her alleged onset date. Plaintiff was diagnosed with bipolar disorder and cannabis use disorder, for which she was admitted to Brooke Glen Behavioral Hospital on September 16, 2020, with complaints of mood swings, anxiety, anger issues, and suicidal thoughts.  Id. at 350-52. On admission she was disheveled, her speech was loud, and she had suicidal ideation.  Id. at 350.  Her mood was anxious, irritable, and angry.  Her affect was labile and

constricted.  Id.  Plaintiff tested positive for PCP and marijuana.[12]  Id.  She was treated

with Seroquel and Ativan[13] and "[h]er mood and affect slowly improved."  Id. at 351.

Plaintiff was discharged on September 22, 2020, and prescribed Seroquel with directions

to follow up with a therapist at Pyramid Healthcare.  Id. at 352.

On March 20, 2021, Aaron W. Kelley, D.O., treated Plaintiff for complaints of

anxiety and shortness of breath at St. Luke's Hospital emergency room.  Tr. at 718.

Plaintiff was released later that day with diagnoses of hypokalemia (low blood

potassium) and shortness of breath.  Id. at 723.

On September 8, 2021, Eric R. Eustice, D.O., treated Plaintiff at St. Luke's

Hospital emergency room for an accidental overdose of PCP.  Tr. at 698.  Plaintiff was

treated with Versed and Haldol, and was released later that day.[14]  Id. at 698, 700, 703-

04.

---

[12]PCP (phencyclidine) "was developed in the 1950s as an intravenous anesthetic; however, due to the side effects of post operative delirium, confusion, and hallucinations, its development for human medical use was discontinued.  Today, PCP is abused for its mind altering effects, and it is no longer legally manufactured or used for medical purposes."  See https://www.drugs.com/phencyclidine.html (last visited Feb. 25, 2026).

[13]Seroquel is used to treat schizophrenia.  See https://www.drugs.com/seroquel.html.  Ativan is a benzodiazepine used to treat insomnia caused by anxiety or situational stress.  See https://www.drugs.com/ativan.html (last visited Feb. 21, 2026).

[14]Versed is a benzodiazepine used to help you relax before having minor medical procedures.  See https://www.drugs.com/mtm/versed.html.  Haldol is an antipsychotic medication used to treat schizophrenia.  See https://www.drugs.com/mtm/haldol.html (last visited Feb. 21, 2026).

On March 14, 2022, Plaintiff's mother and daughter took her to the emergency room at St. Luke's Hospital because Plaintiff stated that she wanted to hurt herself.  Tr. at 688.  Travis J. Backenstoe, R.N., noted that Plaintiff "appears to be under the influence of drugs/etoh."  Id.  Plaintiff tested positive for PCP and marijuana.  Id. at 691.  On mental status exam ("MSE"), Plaintiff was inattentive with a flat affect and had suicidal ideation.  Id. at 690.  Plaintiff was treated with Haldol and Ativan.  Id. at 691.  Plaintiff's mother authorized an involuntary commitment, and on March 15, 2022, Plaintiff was transferred to Fairmount Behavioral Health.  Id. at 420, 695-96.  At Fairmount Behavioral Health, Plaintiff "presented with thought blocking, anxiety, and was guarded."  Id. at 420.  She was diagnosed with psychosis, suicidal ideations, substance use, medication non-compliance, and psychosocial stessors.  Id. at 420.  Plaintiff was discharged on March 28, 2022, with Haldol and Risperdal.[15]  Id. at 419-22.

On April 4, 2022, Plaintiff was involved in a car accident in Virginia.  Tr. at 445.  She suffered two fractured ribs, an injury to her carotid artery, and left pneumothorax, for which she required a chest tube.[16]  Tr. at 464, 468, 473.  Although Plaintiff complained of shoulder pain and limited range of motion, x-rays of the shoulder were normal.  Id. at 530.  On April 10, 2022, Plaintiff was released from the hospital against medical advice and said she would go to the hospital when she arrived home to

---

[15]Risperdal is an antipsychotic used to trat schizophrenia and bipolar disorder.  See https://www.drugs.com/risperdal.html (last visited Feb. 21, 2026).

[16]Pneumothorax is "an accumulation of air or gas in the pleural space.  Dorland's Illustrated Medical Dictionary, 32nd ed. (2012), at 1476.

Pennsylvania.  Id. at 531-32.  Later that day, Plaintiff was admitted to St. Luke's Hospital complaining of shortness of breath.  Id. at 641.  During her admission, in addition to Plaintiff receiving treatment and therapy for her physical conditions, Patrick Shields, M.D., diagnosed her with acute stress disorder and prescribed Lexapro.[17]  Id. at 685-86. Plaintiff was discharged on April 12, 2022.  Id. at 687.  On follow up with Siddhartha Prasad, CRNP, of Easton Area Family Medicine, Plaintiff had pain and limited range of motion of her left shoulder.  Id. at 639.[18]  At that time, Plaintiff had stopped taking Lexapro due to side effects.  Id.

On February 23, 2023, Plaintiff was involuntarily committed for treatment at the behavioral health unit at St. Luke's Hospital after texting her mother that she was going to kill herself before her birthday the next day and making threatening statements towards her sister.  Tr. at 924, 928, 931, 937.  Plaintiff tested positive for PCP and marijuana.  Id. at 936.  She was treated with olanzapine, fluoxetine, and trazodone, and participated in therapy.[19]  Id. at 966, 974-75.  She was discharged on March 1, 2023.  Id. at 974, 979.

---

[17]Lexapro is an antidepressant used to treat depression and anxiety.  See https://www.drugs.com/lexapro.html (last visited Feb. 21, 2026).

[18]When Ziba Monfared, M.D., conducted her consultative examination on September 26, 2022, Plaintiff's only complaint related to the accident was chest pain when she lays on her left side.  Tr. at 883.

[19]Fluoxetine (brand name Prozac) is an antidepressant used to treat depression, panic, anxiety or obsessive-compulsive symptoms.  See https://www.drugs.com/fluoxetine.html.  Olanzapine (brand name Zyprexa) is an atypical antipsychotic used to treat schizophrenia and bipolar 1 disorder.  See https://www.drugs.com/olanzapine.html.  Trazodone is an antidepressant used to treat major depressive disorder.  See https://www.drugs.com/trazodone.html (last visited Feb. 21, 2026).

Plaintiff began treatment for anxiety and depression at Haven House on May 16, 2023.  Tr. at 1070.  At the time of her initial interview, K.C. Carpenter, L.S.W. ("Therapist Carpenter"), noted that Plaintiff admitted seeing black shadows, hearing voices, and had passive suicidal ideation.  Id. at 1071.  Therapist Carpenter diagnosed her with schizoaffective disorder, depressed type; generalized anxiety disorder ("GAD"); post-traumatic stress disorder ("PTSD"); and other hallucinogen use disorder, moderate, in early remission.  Id. at 1081.  On June 23, 2023, Kimberly Garcia, D.N.P. ("NP Garcia"), noted that Plaintiff "is doing very well on the current medication regimen," which consisted of Prozac, Zyprexa, and trazodone.  Id. at 1068.

The record contains the treatment notes from a series of therapy appointments at Haven House.  See tr. at 1105-27 (5 sessions from Oct. 11, 2023 – April 30, 2024). During this period, NP Garcia noted that Plaintiff was dealing with a number of stressors, including the death of her uncle and the identification of her sister's killer from years earlier.  Id.  Throughout this period, Plaintiff's MSEs were normal.  Id.

On May 13, 2024, NP Garcia completed a Psychological Assessment Form, indicating that Plaintiff suffers from major depressive disorder, recurrent, severe; and GAD.  Tr. at 1129.  NP Garcia indicated that Plaintiff's condition prevents her from attending work on a regular basis; she is unable to interact in a social situation; and she is unable to focus in a work situation.  Id. at 1129-30.  She noted that Plaintiff is "isolated to herself [and] very anxious when around others[, and has] profound impairment in concentration."  Id.  NP Garcia also opined that Plaintiff's mental illness would cause her

17

to miss work more than once a month and that she would have difficulty with punctuality. Id.

2.    Consultative Examiners and State Agency Physicians

On September 26, 2022, Dr. Monfared conducted an Internal Medicine Examination, noting that Plaintiff suffers from chest pain when she lies on her left side and asthma, for which she uses albuterol on an as-needed basis.[20]  Tr. at 883.  At that time, Plaintiff was taking fluoxetine, olanzapine, and trazodone.  Id. at 883-84.  The physical examination was normal, except Dr. Monfared noted Plaintiff could squat at 80% of full.  Id. at 884-85.  Strength was 5/5 in her upper and lower extremities, grip strength was 100%, and her hand and finger dexterity was intact.  Id. at 885.  Based on the examination, Dr. Monfared found Plaintiff could frequently lift 100 pounds, frequently carry 50 pounds, and was not limited in her ability to sit, stand, or walk.  Id. at 888.

On September 26, 2022, Kyle Elizabeth Culver, Psy.D., conducted a Mental Status Evaluation.  Tr. at 901-04.  On MSE, Dr. Culver noted that Plaintiff's speech was fluent, clear, and expressive; thought processes were coherent and goal direct; and her affect was appropriate to speech and thought content.  Id. at 903.  Plaintiff reported being anxious, but Dr. Culver noted that her mood "appeared to be neutral to dysthymic."  Id.  Her attention and concentration were intact, but her recent and remote memory skills were

---

[20]Albuterol is a bronchodilator that relaxes the muscles in the airways and increases air flow to the lungs.  See https://www.drugs.com/albuterol.html (last visited Feb. 21, 2026).

impaired as she could remember 0 of 3 objects after a five-minute delay. Id. Dr. Culver diagnosed Plaintiff with unspecified schizophrenia spectrum and other psychotic disorder, unspecified depressive disorder, unspecified anxiety disorder, and PCP substance use disorder, in early remission. Id. at 904. Dr. Culver noted that Plaintiff would not be able to manage her own funds due to PCP abuse. Id.

In a Medical Source Statement, Dr. Culver found Plaintiff had mild limitation in her abilities to understand, remember, and carry out simple instructions and make judgments on simple work-related decisions; and moderate limitation in her abilities to understand, remember, and carry out complex instructions and make judgments on complex work-related decisions. Tr. at 905. In the ability to interact with others, Dr. Culver found Plaintiff had mild to moderate limitation in the abilities to interact with the public, supervisors, and coworkers, and respond appropriately to usual work situations and changes in a routine work setting. Id. at 906.

Dr. Culver conducted a second Mental Status Evaluation on November 2, 2023. Tr. at 1093-96. At that time, Dr. Culver found Plaintiff's language fluent, clear, and adequate; her thought processes were coherent and goal oriented; her affect was appropriate to speech and thought content; and mood was neutral to anxious. Id. at 1094-95. Dr. Culver found Plaintiff's attention and concentration were intact, but her recent and remote memory skills remained impaired. Id. at 1095. Dr. Culver diagnosed Plaintiff with unspecified depressive disorder, unspecified anxiety disorder, unspecified schizophrenia spectrum and other psychotic disorder by report, and PCP use disorder in remission. Id. at 1096. In her Medical Source Statement, Dr. Culver found Plaintiff had

19

mild limitation in her abilities to understand, remember, and carry out simple instructions; mild to moderate limitation in her abilities to make judgments on simple work-related decisions and understand and remember complex instructions; and moderate to marked limitation in the abilities to carry out complex instructions and make judgments on complex work-related decisions. Id. at 1097. In the ability to interact with others, Dr. Culver continued to find Plaintiff had moderate limitation in all areas. Id. at 1098.

At the initial consideration stage on October 11, 2022, based on her review of the record, Esther Marie Kim, M.D., found that Plaintiff could occasionally lift/carry 50 pounds and frequently lift/carry 25 pounds. Tr. at 83. Dr. Kim also found that Plaintiff could sit for 6 hours and stand and/or walk for 6 hours each in an 8-hour workday. Id. Based on Plaintiff's diagnosis of asthma, Dr. Kim determined Plaintiff should avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dusts, gasses, poor ventilation, and hazards. Id. at 84.

On October 24, 2023, on reconsideration, Louis Joseph Tedesco, M.D., found Plaintiff could occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds. Tr. at 99. Like Dr. Kim, Dr. Tedesco concluded Plaitniff could sit for 6 hours and stand and/or walk for 6 hours in an 8-hour workday. Id. at 99. Dr. Tedesco found no environmental limitations. Id.

With respect to Plaintiff's mental limitations, on November 1, 2022, at the initial consideration stage, Douglas P. Schiller, Ph.D., found that Plaintiff has moderate limitations in her abilities to understand, remember, or apply information; interact with

20

others; concentrate, persist, or maintain pace; and adapt or manage oneself.  Tr. at 81.

Dr. Schiller determined that Plaintiff was not significantly limited in her abilities to

understand, remember, and carry out very short and simple instructions, but she was

moderately limited in the abilities to understand, remember, and carry out detailed

instructions.  Id. at 85.  In addition, Dr. Schiller found that Plaintiff was not significantly

limited in her abilities to interact with the general public, ask simple questions, get along

with coworkers, and maintain socially appropriate behavior, but that she was moderately

limited in the abilities to accept instructions and respond appropriately to criticism from

supervisors.  Id. at 86.

On reconsideration, on November 9, 2023, Edward A. Jonas, Ph.D., found that

Plaintiff had moderate limitations in her abilities to understand, remember, or apply

information; interact with others; concentrate, persist, or maintain pace; and adapt or

manage oneself.  Tr. at 96.  Dr. Jonas found Plaintiff was not significantly limited in her

abilities to understand, remember, and carry out very short and simple instructions, and

moderately limited in her abilities to understand, remember, and carry out detailed

instructions.  Id. at 100.  Dr. Jonas found Plaintiff was moderately limited in her abilities

to interact with the general public, accept instructions and respond appropriately to

criticism from supervisors, and get along with coworkers.  Id. at 101.

E.    Discussion

After reviewing the treatment evidence and the testimony at the hearing, I

conclude that the ALJ's decision is supported by substantial evidence.  Although the ALJ

determined that Plaintiff could perform work at all exertional levels, she specifically

21

asked the VE to identify light exertional jobs.  Tr. at 63-64.  The medical records do not support any additional exertional limitations.  Plaintiff told Dr. Monfared that the only residual from her car accident was that she has left-sided chest pain when she lies on that side.  Id. at 883.  Dr. Monfared concluded that Plaintiff could sit, stand, and walk for 8 hours each.  Of all of the physical RFC assessments in the record, Dr. Tedesco's was the most restrictive with lifting and carrying limitations consistent with light work.  20 C.F.R. § 404.1567(b).  Because the VE identified jobs at the light exertional level, I find no error in the ALJ's findings.  The ALJ also included environmental limitations addressing Plaintiff's asthma.  Tr. at 22.

With respect to the limitations imposed by Plaintiff's mental health impairments, the ALJ limited Plaintiff to "routine tasks with detailed but uninvolved instructions, no contact with the public, incidental interactions with coworkers, occasional interactions with supervisors, [and] occasional changes in work processes or tasks."  Tr. at 22.  These limitations adequately addressed the mild limitation Dr. Culver found in Plaintiff's abilities to understand, remember, and carry out simple instructions, and moderate interaction limitations, see id. at 1097; see also id. at 85 (Dr. Schiller – mild limitations), 100 (Dr. Jonas – not significantly limited), and moderate interaction limitations.  Id. at 1098 (Dr. Culver), 101 (Dr. Jonas); see also id. at 86 (Dr. Schiller – ranging from not significantly limited to moderately limited in interaction).

The only assessment that noted more restrictive limitations was that of NP Garcia, the nurse practitioner who treated Plaintiff at Haven House.  However, NP Garcia's assessment of profound and severe impairment on Plaintiff's abilities is inconsistent with

her own treatment notes, which evidenced normal MSEs during the period during which she treated Plaintiff, and inconsistent with the treatment record as a whole. See 20 C.F.R. § 404.1520c(b)(2) (The most important factors in evaluating opinion evidence are supportability and consistency.). The record establishes that Plaintiff was hospitalized for psychotic symptoms on several occasions when she was under the influence of PCP. Tr. at 350-51 (Sept. 16 -22, 2020), 419-20, 694-95 (Mar. 14-29, 2022), 936, 974-75 (Feb. 23-Mar. 1, 2023). Otherwise, Plaintiff exhibits limitations in her memory and moderate difficulties in interaction. As explained, the ALJ's RFC assessment adequately addressed these limitations. Therefore, I find that the ALJ's decision is supported by substantial evidence.

## IV.   **CONCLUSION**

Plaintiff's claim that the Appeals Council violated the HALLEX by failing to provide a transcript of the administrative hearing is not, by itself, a basis for remand. In addition, Plaintiff has failed to show that she suffered any prejudice based on the lack of transcript because she has not identified any error that the Appeals Council should have addressed. Reviewing the ALJ's decision and the entire record, I find no error in the ALJ's decision and find that the decision is supported by substantial evidence.

An appropriate Order follows.